John P. Aldrich (Nevada Bar No. 6877)
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Phone: (702) 853-5490
Fax: (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Jeffrey C. Block, *pro hac vice to be filed*
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Phone: (617) 398-5600
Fax: (617) 507-6020
jeff@blockleviton.com

*Attorneys for Plaintiff Michael F. Salbenblatt*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL F. SALBENBLATT, *Individually and on Behalf of All Others Similarly Situated,*<br><br>Plaintiff,<br><br>vs.<br><br>VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON,<br><br>Defendants. | Case No.<br><br><br><u>**CLASS ACTION**</u><br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

1. Plaintiff Michael F. Salbenblatt ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon the investigation of plaintiff's counsel, which included a review and analysis of U.S. Securities and Exchange Commission ("SEC") filings made by Vintage Wine Estates, Inc. ("Vintage Wine Estates" or the "Company"), as well as reports and advisories about the Company composed by securities analysts, press releases and other public statements issued by the Company, media reports and other publicly available information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**INTRODUCTION**

2. Plaintiff brings claims against all Defendants for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) on behalf of the class of persons and entities that purchased or otherwise acquired Vintage Wine Estates securities between October 13, 2021 and September 13, 2022 (the "Class Period").

3. Vintage Wine Estates sells wine and spirits. The Company reportedly has over 60 wine and spirits brands totaling around 3 million cases annually, making it the 14th largest wine corporation in the United States. The Company describes its business as consisting of curating and marketing its brands and services to customers via various channels, including direct-to-consumer, wholesale, and retail. Vintage Wine Estates brands range from $10 to $150 per bottle, with the majority selling in the $12 to $20 price range.

4. On September 13, 2022, Vintage Wine Estates announced disappointing financial results for fiscal year 2022 and disclosed that figures contained in previous public statements and SEC filings were inaccurate by a wide margin. The Company disclosed that it "recorded $19.1 million in non-cash inventory adjustments identified through efforts t[o] improve and strengthen inventory management, processes and reporting." The Company further disclosed that "the [fourth] quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods."

5. Immediately following these revelations, the Company's share price plummeted 40.3%, to close at $3.30 per share on September 14, 2022, on high trading volume.

6. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) material weaknesses relating to inventory controls and procedures substantially undermined the reliability of the Company's inventory metrics; (2) the Company repeatedly understated its overhead, and thus falsely inflated its adjusted EBITDA; (3) because of these issues, Vintage Wine Estates was likely to incur significant charges to restate prior reporting; and (4) Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). The Company's principal offices are located in this District. Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Defendants' wrongful acts also arose in, emanated from, and caused harm in this District. Such acts include the dissemination of materially misleading statements into this District. Additionally, venue is proper in light of the purchase of the Company's common stock by members of the Class who reside in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange, the Nasdaq.

# THE PARTIES

### A. Plaintiff

11. Plaintiff Michael F. Salbenblatt, as set forth in the accompanying certification, incorporated by reference herein, purchased Vintage Wine Estates securities during the Class Period, and suffered damages as a result of the violations of federal securities law and false and/or misleading statements and/or material omissions alleged below.

### B. Defendants

12. Defendant Vintage Wine Estates is incorporated under the laws of Nevada with its principal executive offices located in Incline Village, Nevada. Vintage Wine Estates' common stock trades on Nasdaq under the symbol "VWE," and its warrants to purchase common stock trade under the symbol "VWEWW."

13. Defendant Patrick Roney ("Roney") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Katherine DeVillers ("DeVillers") was the Company's Chief Financial Officer ("CFO") from June 2021 to March 7, 2022. Since March 7, 2022, DeVillers has served as the Company's Executive Vice President of Acquisition Integrations.

15. Defendant Kristina Johnston ("Johnston") has been the Company's Chief Financial Officer ("CFO") since March 7, 2022.

16. Defendants Roney, DeVillers, and Johnston (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to the market via securities analysts, money and portfolio managers and institutional investors. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading before, or immediately after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the

public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements set forth below.

### DEFENDANTS' FALE AND MISLEADING STATEMENTS

17. The Company went public on June 8, 2021, via merger with Bespoke Capital Acquisition Corp., a publicly-traded special purpose acquisition company. Following the conclusion of the merger, Vintage Wine Estates common stock began trading under the new ticker symbol "VWE" on the Nasdaq.

18. Throughout the Class Period, Defendants made representations about the Company's earnings and inventory that were false and misleading, while failing to correct known material weaknesses with their internal controls relating to those issues.

19. On October 13, 2021, the start of the Class Period, Vintage Wine Estates filed its Form 10-K with the SEC for the period ended June 30, 2021 (the "2021 10-K"). Under Item 9A, designated "Controls and Procedures" the Company stated:

> Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, ***as a result of a material weakness in our internal control over financial reporting and discussed below, our disclosure controls and procedures were not effective as of June 30, 2021.*** Management's conclusion was based on discoveries and observations made during the fiscal 2021 audit.
>
> \*   \*   \*
>
> Material Weakness
>
> ***Despite not conducting a formal assessment regarding internal control over financial reporting, management identified the material weakness described below during the fiscal 2021 audit.*** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.
>
> Control Activity—***The Company did not have effective business processes and controls to perform reconciliations of certain account balances related to inventory, and the received not invoiced and cellar accruals, on a regular basis.***

Class Action Complaint for Violations of Federal Securities Laws                                            5

20. The 2021 10-K also stated the following as to the Company's inventory:

> During the year ended June 30, 2021, we recognized impairment of inventory of $3.3 million associated with inventory damage caused by the 2020 Northern California wildfires.
>
> During the year ended June 30, 2020, we recognized an impairment of inventory of approximately $3.9 million associated with inventory damage caused by Northern California fires. In December 2020, we entered into a settlement agreement for $4.8 million in connection with the damaged inventory.

21. On November 15, 2021, the Company published a press release announcing its financial results for the first quarter of fiscal 2022. The November 15, 2021 Press Release stated:

> Operating expenses increased $3.3 million, or 23.6%, to $17.3 million. Higher selling, general and administrative expenses reflected approximately $1.8 million of incremental costs related to infrastructure required to be a public company, as well as the continued increased costs of labor, warehousing, freight, and insurance.
>
> \*   \*   \*
>
> **_Adjusted EBITDA increased to $11.8 million_**, or 21.1% of net revenue, from $11.7 million, or 21.7% of net revenue, reflecting strong growth in DTC.

22. The statement identified above in ¶ 21 was materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, because it failed to disclose that the Company understated its overhead, thereby overstating its adjusted EBITDA.

23. On November 15, 2021, Vintage Wine Estates filed its Form 10-Q for the period ended September 30, 2021 (the "November 2021 10-Q"), affirming the previously reported financial results. It stated that the previously disclosed material weakness had not been remediated.

24. The November 2021 10-Q reported the following about inventory:

| (in thousands) | September 30, 2021 | June 30, 2021 |
|---|---|---|
| Bulk wine and spirits | $ 103,857 | $ 119,333 |
| Bottled wine and spirits | 106,482 | 90,083 |
| Bottling and packaging supplies | 13,991 | 10,482 |
| Nonwine inventory | 1,486 | 1,247 |
| Total inventories | $ 225,816 | $ 221,145 |

For the three months ended September 30, 2021 and 2020, the Company did not recognize any impairment of inventory.

Class Action Complaint for Violations of Federal Securities Laws                                    6

25. As indicated in the chart above, the Company summarized the information contained in the chart by stating as follows: ***"For the three months ended September 30, 2021 and 2020, the Company did not recognize any impairment of inventory."***

26. The statements identified above in ¶¶ 24-25 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, because it failed to disclose that due to a material weakness related to its inventory controls and procedures, the Company lacked a reasonable basis to report inventory metrics.

27. On February 14, 2022, the Company published a press release announcing its financial results for the second quarter of fiscal 2022. It stated, in relevant part:

> Operating expenses increased $13.6 million, or 111.7%, to $25.8 million. Higher selling, general and administrative expenses reflected approximately $1.8 million of higher professional fees primarily related to public company costs, as well as investments in marketing and talent. In addition, variable selling expenses, which increase with volume and are typically approximately 10% of revenue, were $3.7 million in the quarter. Incremental SG&A from the acquisitions was $2.3 million and does not yet represent expected synergies.
>
> \*   \*   \*
>
> ***Adjusted EBITDA increased 137% to $20.2 million, or 24.2% of net revenue, from $8.6 million, or 13.6% of net revenue***, reflecting the overall strong performance of VWE in the quarter.

28. The statement identified above in ¶ 27 was materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, because it failed to disclose that the Company understated its overhead, thereby overstating its adjusted EBITDA.

29. On February 14, 2022, Vintage Wine Estates filed its Form 10-Q for the period ended December 31, 2021 (the "February 2022 10-Q"), affirming the previously reported financial results. It stated that the previously disclosed material weakness had not been addressed.

30. The February 2022 10-Q reported the following about the Company's inventory:

| (in thousands) | December 31, 2021 | June 30, 2021 |
|---|---|---|
| Bulk wine, spirits and cider | $ 110,202 | $ 119,333 |
| Bottled wine, spirits and cider | 102,740 | 90,083 |
| Bottling and packaging supplies | 7,751 | 10,482 |
| Nonwine inventory | 1,648 | 1,247 |
| Total inventories | $ 222,341 | $ 221,145 |

For the three months ended December 31, 2021 and 2020, respectively, the Company recognized impairment of inventory of zero and $3.3 million. For the six months ended December 31, 2021 and 2020, respectively, the Company recognized impairment of inventory of zero and $3.3 million.

31. As indicated in the chart above, the Company summarized the information contained in the chart by stating as follows: "For the three months ended December 31, 2021 and 2020, respectively, the Company recognized impairment of inventory of zero and $3.3 million. ***For the six months ended December 31, 2021 and 2020, respectively, the Company recognized impairment of inventory of zero and $3.3 million.***"

32. The statements identified above in ¶¶ 30-31 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, because it failed to disclose that due to a material weakness related to its inventory controls and procedures, the Company lacked a reasonable basis to report inventory metrics.

33. On May 16, 2022, the Company published a press release announcing its financial results for the third quarter of fiscal 2022. It stated, in relevant part:

> Income from operations during the quarter increased $0.7 million, or 380.4%, to $0.9 million in the third quarter of fiscal 2022. Operating margin for the quarter was 1.1%, compared with 0.4% in the prior-year period. Operating income and margin were impacted by the acquisitions, which have not yet been fully integrated, as well as inefficiencies related to labor, logistics and supply chain challenges.
>
> \*   \*   \*
>
> ***Adjusted EBITDA increased 38.2% to $14.0 million, from $10.1 million, on higher revenue.*** As a percentage of net revenue, adjusted EBITDA was 17.7% compared with 21.6% in the prior-year period as the combination of certain acquisitions not being fully integrated and higher costs not yet covered by pricing actions.

34. The statement identified above in ¶ 33 was materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, because it failed to disclose that the Company understated its overhead, thereby overstating its adjusted EBITDA.

Class Action Complaint for Violations of Federal Securities Laws    8

35. On May 16, 2022, Vintage Wine Estates filed its Form 10-Q for the period ended March 31, 2022 (the "May 2022 10-Q"), affirming the previously reported financial results. It stated that the previously disclosed material weakness had not been remediated.

36. The May 2022 10-Q reported the following about inventory:

| (in thousands) | March 31, 2022 | June 30, 2021 |
|---|---|---|
| Bulk wine, spirits and cider | $ 109,408 | $ 119,333 |
| Bottled wine, spirits and cider | 89,808 | 90,083 |
| Bottling and packaging supplies | 20,526 | 10,482 |
| Nonwine inventory | 1,522 | 1,247 |
| Total inventories | $ 221,264 | $ 221,145 |

37. The Company summarized the information contained in the chart by stating as follows: "*For the three months ended March 31, 2022 and 2021, respectively, the Company recognized no impairment of inventory. For the nine months ended March 31, 2022 and 2021, respectively, the Company recognized impairment of inventory of zero and $3.3 million.*"

38. The statements identified above in ¶¶ 36-37 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, because it failed to disclose that due to a material weakness related to its inventory controls and procedures, the Company lacked a reasonable basis to report inventory metrics.

39. Each of the statements identified above in ¶¶ 17-38 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) due to a material weakness related to its inventory controls and procedures, the Company lacked a reasonable basis to report inventory metrics; (2) the Company understated its overhead burden in certain quarters, thereby overstating its adjusted EBITDA; (3) as a result, Vintage Wine Estates was likely to incur significant charges to restate prior reporting; and (4) consequently, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### THE CORRECTIVE DISCLOSURE

40. On September 13, 2022, Vintage Wine Estates issued a press release announcing disappointing fourth quarter and full year fiscal 2022 financial results.

41. The Company disclosed that it recorded $19.1 million in non-cash inventory adjustments which were "identified through efforts to improve and strengthen inventory management, processes, and reporting."

42. The Company also stated that "the [fourth] quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods."

43. The press release stated, in relevant part:

> Gross profit was down $11.1 million to $38 thousand reflecting adjustments identified through processes implemented to improve internal controls. ***Specifically, the Company recorded $19.1 million in non-cash inventory adjustments identified through efforts t[o] improve and strengthen inventory management, processes and reporting.*** This included physical inventory count adjustments of $12.4 million, $3.7 million related to the establishment of inventory reserves and $3.0 million related to the impact of additional remediation efforts. ***In addition, the quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods***.

44. The press release continued, attributing some of the Company's financial difficulties to factors other than those identified above:

> Also impacting gross profit were inefficiencies created by supply chain constraints and inflation. These impacts were partially offset by gross profit contributions of the acquisitions and improved pricing in DTC.

45. Defendant Johnston characterized the information in the following manner:

> Since joining VWE in March, I have been impressed by this team of very dedicated people who are intent upon executing our strategy to drive growth and deliver on our mission to provide the finest quality wines and create incredible customer experiences. We are now diligently applying this focus and intensity in our financial processes in order to remediate our material weakness. We have instituted improved accountability metrics, updated assumptions for overhead absorption processes better reflecting the current business and created greater discipline around timeliness in reporting throughout the organization. The implementation of more stringent processes drove the adjustments in inventory, but we expect this will also drive greater transparency and better future results for the Company.

46. On this news, the Company's share price fell $2.23, or 40.3%, to close at $3.30 per share on September 14, 2022, on high volume.

## INDICIA OF SCIENTER

47. Defendants knew that each of the public documents and statements identified above and issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Vintage Wine Estates' inventory and earnings, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vintage Wine Estates, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements set forth in this Complaint. The statements alleged to be false and misleading above all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements set forth in this Complaint, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Vintage Wine Estates who knew that the statement was false when made.

## LOSS CAUSATION

49. Defendants' wrongful conduct was the direct and proximate cause of the losses suffered by Plaintiff and the Class.

50. During the Class Period, Plaintiff and the Class purchased Vintage Wine Estates' securities at artificially inflated prices. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. Defendants false and misleading statements were the direct and proximate cause of such losses. The timing, scope, and scale of the drop of the share price for the Company's common stock following the revelations that previous financial disclosures relating to earnings and inventory were inaccurate by a margin of tens of millions of dollars establish as much.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action individually and as a class action on behalf of all persons or entities, other than Defendants, who purchased or otherwise acquired Vintage Wine Estates securities between October 13, 2021, and September 13, 2022.

52. This action is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

53. The Class is so numerous that joinder of all members is impracticable. Throughout the Class Period, millions of the Company's shares traded on the Nasdaq. Consequently, the number of Class members is believed to be in the thousands and Class members are likely scattered across the United States.

54. The precise number of Class members is unknown to Plaintiff at this time but could be determined following discovery as Record owners and other members of the Class may be identified based on documents possessed by Vintage Wine Estates or its transfer agent. Those persons and entities may be notified by mail or other means of the pendency of this action as is typically done in securities class actions.

55. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

56. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

57. Additionally, common questions of law and fact predominate over questions affecting any individual Class member. The common questions include, *inter alia*:

   a. whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Vintage Wine Estates;

   b. whether Defendants thereby violated the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5); and

   c. whether and to what extent Class members have been damaged by Defendants and the proper measure of damages.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for several reasons. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants. Also, adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interest of other members or substantially impair or impede their ability to protect their interests. Moreover, damages suffered by individual Class members may be small, making it overly expensive and burdensome for individual Class members to pursue redress on their own and the number of Class members makes joinder impracticable.

59. There will be no difficulty in the management of this litigation.

60. Defendants have acted on grounds generally applicable to the Class with respect to the allegations in this Complaint, and, accordingly, the relief sought herein with respect to the Class as a whole is appropriate.

**FRAUD ON THE MARKET**

61. The market for Vintage Wine Estates' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose described above, the Company's securities traded at artificially inflated prices during the Class Period. The Company's share price reached a Class-Period-high of $12.07 per

share on January 3, 2022. Plaintiff and other members of the Class were damaged by purchasing or otherwise acquiring the Company's securities while relying upon the integrity of the market price of the Company's securities and market information relating to Vintage Wine Estates.

62. During the Class Period, the artificial inflation of Vintage Wine Estates' shares was caused by the material misrepresentations and/or omissions identified above.

63. During the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vintage Wine Estate's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Vintage Wine Estates and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

64. At all relevant times, Vintage Wine Estates' securities were traded in an efficient market.

65. Vintage Wine Estates' shares met the requirements for listing and were actively traded on Nasdaq, a highly efficient and automated market.

66. As a regulated issuer, Vintage Wine Estates filed regular public reports with the SEC and Nasdaq.

67. Vintage Wine Estates regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

68. Vintage Wine Estates was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

69. The market for Vintage Wine Estates' securities promptly digested current information regarding Vintage Wine from all publicly available sources and reflected such information in Vintage Wine's share price. Accordingly, all purchasers of Vintage Wine Estates' securities during the Class Period suffered similar injury through their purchase of the Company's securities at artificially inflated prices and a presumption of reliance applies.

70. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. This action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—and, accordingly, positive proof of reliance is not required. Establishing that the facts withheld were material such that a reasonable investor might have considered them important in making investment decision is sufficient and satisfied here.

## COUNT ONE

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5**

**(Against All Defendants)**

71. Plaintiff reincorporates and realleges each and every allegation contained above as if fully set forth herein.

72. By reason of the conduct herein alleged, each Defendant named herein violated Section 10(b) of the Exchange Act and Rule 10b-5.

73. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Vintage Wine's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

74. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vintage Wine Estates' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Vintage Wine Estates' financial well-being and prospects, as specified herein.

76. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vintage Wine Estates' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about the Company and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

77. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances,

operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

78. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Vintage Wine Estates' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Vintage Wine Estates' securities was artificially inflated during the Class Period. Without knowledge that the market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Vintage Wine's securities during the Class Period at artificially high prices.

80. At the time of such misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Vintage Wine was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Vintage Wine Estates

securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period. Specifically, Plaintiff and the Class have sustained damages because they purchased Vintage Wine Estates stock at an inflated price, which declined as a result of the corrective disclosure described above.

## COUNT TWO

### Violation of Section 20(a) of the Exchange Act

### (Against the Individual Defendants)

83. Plaintiff reincorporates and re-alleges each and every allegation contained above as if fully set forth herein.

84. The Individual Defendants were controlling persons of Vintage Wine Estates within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unrestricted access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86. As set forth above, Vintage Wine Estates and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1. Ordering that this action may be maintained as a class action and certifying Plaintiff as Class representatives and their counsel as Class counsel for actual damages and such other relief as the court deems appropriate;
2. For pre-judgment and post-judgment interest on any such monetary relief;
3. For reasonable attorneys' fees and costs;
4. For costs of suit herein; and
5. For such further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all counts so triable.

November 28, 2022                                    Respectfully submitted,

By: */s/ John P. Aldrich*
John P. Aldrich (Nevada Bar No. 6877)
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Phone: (702) 853-5490
Fax: (702) 227-1975
jaldrich@johnaldrichlawfirm.com

*Local Counsel*

Class Action Complaint for Violations of Federal Securities Laws                    19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BLOCK & LEVITON LLP**

Jeffrey C. Block, *pro hac vice to be filed*
260 Franklin Street, Suite 1860
Boston, MA 02110
Phone: (617) 398-5600
Fax: (617) 507-6020
jeff@blockleviton.com

*Counsel for Plaintiff Michael F. Salbenblatt*